# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**MICHAEL MCKEON**, individually and on behalf of all others similarly situated,

    Plaintiff,

  v.

**INTEGRITY PIZZA LLC** and **INFINITY PIZZA LLC,**

    Defendants.

**Case No. 1:18-cv-00932-WJM-KLM**

## JOINT MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT

Plaintiff Michael McKeon, individually and on behalf of all others similarly situated, together with Defendants Integrity Pizza LLC and Infinity Pizza LLC (collectively "Defendants"), through their undersigned counsel, request final approval of the Settlement Agreement ("Agreement") reached by the Parties to this action, including payment of reasonable attorneys' fees and costs. As set forth below, the Agreement is fair and reasonable and should be approved by the Court. Accordingly, the Parties respectfully request the Court issue an Order:

(1) granting final approval of the Agreement;

(2) approving distribution of the Qualified Settlement Fund, as defined in the Agreement, to the Class Members;

(3) approving a participation award payment in the amount of $5,000 to Michael McKeon;

(4) approving attorneys' fees to Collective Counsel[1] in the amount of $133,000, which is equivalent to 33% of the Maximum Settlement Amount, and reimbursement of Collective Counsel's costs and litigation expenses, which are not to and have not exceeded $15,000; and

---

[1] The term "Collective Counsel" refers to the attorneys who represent the Opt-In Plaintiffs and the Settlement Class Members.

1

(5) entering a judgment dismissing this case with prejudice in accordance with the terms of the Agreement.

## I. INTRODUCTION

This lawsuit alleges insufficient delivery driver reimbursement pay and the failure to provide drivers with meal and rest breaks, and was settled following a mediation between the Parties through the assistance of a mediator, Todd McNamara of Denver, Colorado, subject to the Court's approval. The Parties filed a Joint Motion for Preliminary Approval of the Parties Settlement on December 9, 2019 (Dkt. #54). On August 13, 2020, the Court granted the motion (Dkt. #62) and issued an Order that:

(1) the Joint Motion for Preliminary Approval of the Parties Settlement (Dkt. #54) was granted as stated therein;

(2) the class was certified for the purposes of settlement and is defined as:

> "Delivery Drivers employed by Defendants between April 20, 2015 and August 6, 2020, who have not previously opted-in this matter"

(3) approved the Notice of Class Action Settlement that had been amended through the Court's direction, which explained the terms of the Agreement, Delivery Drivers' rights under the Agreement, the procedure and claim form for objecting to or excluding one's self from the Agreement, and provided information regarding the Fairness Hearing;

(4) the Fairness Hearing would be held on Thursday, November 12, 2020 at 9:30 a.m. in Courtroom A801 at the Alfred A. Arraj Courthouse, 901 19th Street, Denver, Colorado 80294; and

(5) the stay ordered in this case would continue until further order of the Court.

Pursuant to the Court's Order dated August 6, 2020 (Dkt. #62), the Parties notified all Settlement Class Members and eligible delivery drivers employed by Defendants from April 20, 2015 to August 6, 2020 who had not previously opted-in this matter ("Class Members") of the date and time of the Fairness Hearing, along with contact information to obtain additional information regarding the Fairness Hearing. The Parties have fully complied with the terms of the Court's August 6, 2020 Order. There have been no objections to or requests for exclusion from the Agreement. Similarly, no Delivery Drivers requested to participate in the Fairness Hearing. *See generally*, **Exhibit 1** (Declaration of Third Party Administrator as to these facts). For the reasons set forth below, the Court should grant the Parties' motion.

## II.     BACKGROUND

This lawsuit ("the Litigation") was brought on behalf of individuals hired to deliver pizzas for Defendants (*See generally*, Amended Complaint (Dkt. #53). Plaintiff Michael McKeon and others who have opted in to the lawsuit (collectively "Plaintiffs") allege that Defendants violated the Fair Labor Standards Act ("FLSA"), the Colorado Wage Claim Act (the "Wage Claim Act"), and the Colorado Minimum Wage Act (the "Minimum Wage Act") (together the Wage Claim Act and the Minimum Wage Act are the "Colorado state law claims") by failing to pay them and other similarly situated delivery drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants and by failing to ensure that drivers received paid rest breaks during their shifts and were properly compensated for missed or interrupted meal breaks. *Id.* Defendants deny that they are liable in this action and contend that they appropriately compensated the drivers and provided them with all required meal and rest breaks.

After the filing of this action, the Parties discussed whether and how the matter

3

could be resolved. As a result, the Parties engaged in arms' length negotiations and jointly moved for conditional certification of an FLSA collective action (Dkt. #23). The Court granted that Motion (Dkt. #44); thereafter, the Parties agreed to participate in an alternative dispute resolution ("ADR") process. The ADR process included a full-day, in-person mediation before an experienced mediator, Todd McNamara, that took place in Denver, Colorado on August 22, 2019, as well as subsequent discussions through the mediator. Prior to the mediation, the Parties exchanged information which included Defendants' production of mileage and mileage reimbursement data for the delivery drivers employed by Defendants who had opted in to the FLSA collective action. In preparation for the mediation, the Parties prepared detailed mediation statements and damages analyses. Utilizing this data, Plaintiffs concluded they had sufficient information concerning Plaintiffs' claims and Defendants' defenses from which to reach a fair settlement of this matter. At the mediation, the Parties settled this putative class and collective action on the terms set forth within the Settlement Agreement, which is re-attached hereto as **Exhibit 2**.

The Agreement provides an excellent outcome for the original opt in Plaintiffs and Settlement Class Members. Defendants contend that their reimbursements to delivery drivers are reasonable approximations of their automobile expenses and do not cause drivers' wages to fall below the federal minimum wage. Similarly, Defendants contend that Plaintiff and Class Members were afforded meal and rest breaks as required by Colorado law. If the Court were to accept Defendants' position, it would negate a substantial percentage of alleged damages in the case (if not all damages) and further disqualify a large number of delivery drivers who were employed by Defendants outside of the two-year statutory period. Notwithstanding these defenses, Plaintiffs were ultimately able to obtain a recovery for all eligible Settlement Class Members who were employed by

4

Defendants during the three-year period preceding the filing of the Complaint.

The Parties respectfully submit that this Motion should be granted because the proposed Agreement satisfies all of the criteria for approval under federal law and falls well within the range of reasonableness.

### III.     **THE TERMS OF THE AGREEMENT**

The Parties negotiated the Agreement on behalf of a Settlement Class of Delivery Drivers defined as: Delivery Drivers employed by Defendants between April 20, 2015 and August 6, 2020, who had not previously opted-in this matter. The Agreement allowed delivery drivers to participate in the settlement on an opt-in basis, even though a similar period had already occurred pursuant to the Parties' prior agreement, this Court's Order, and the collective action procedure of the FLSA. (Dkt. #62). The Agreement then provides that even those delivery drivers who elected not to opt-in to either of this matter's two Notice Rounds would still be eligible for a monetary recovery. Following the second settlement notice round, zero drivers opt-ed out of the settlement and zero objections to the settlement were filed.

Pursuant to the Agreement, the Settlement Amount is a total of $396,205.00 out of which the amounts below will be deducted. (Agreement, **Ex. 2** at ¶ 3.1.) Pursuant to the Agreement, the distribution of the Settlement Amount is as follows:

1.     Plaintiff McKeon will receive $5,000 as a participation payment in recognition of the work involved and the benefits achieved by the Plaintiffs;

2.     Collective Counsel will receive $133,000 in attorneys' fees and be reimbursed advanced litigation costs and expenses in an amount not to exceed $15,000; and,

3.     Pursuant to the Settlement Agreement, the Claims Administrator is to email data to the Parties' attorneys within 10 days following the final approval order, so that the

5

Parties may jointly approve final distributions of the remaining $234,205 Net Settlement Fund, and Class Members will be mailed checks 21 days following final approval.  While the precise amounts of the final distributions are still to be determined, following the settlement notice period there are approximately 724 absent class members (the 781 noticed class members less the 57 Opt-ins who submitted claim forms to the Class Administrator after the Round 2 Notice was sent to them plus one late opt in). *See* **Exhibit 1.** Applying a minimum payment as was applied and approved in Class Counsel's recently approved and related case in this District, *Fletcher & Murray v. Tips, Inc.*, Case 1:18-cv-00937 (D. Colo.)(in which a $66 minimum payment was set for absent class members) results in a projected absent class member minimum payment fund of at least $47,784 leaving $195,421 to be distributed among the opt-ins (the Round 2 Opt-ins plus the original FLSA/Round 1 Opt-Ins) on a *pro rata basis* for a projected opt-in average in excess of $1,750.

4. Any amounts of the Net Settlement Fund representing the funds attributable to stale checks (those unclaimed 180 days after the initial mailing), will revert to the Parties' designated 501(c)(3) non-profit organizations (the Domino's Partner's Foundation).

## IV. THE COURT SHOULD APPROVE THE AGREEMENT

The Parties' Settlement Agreement is a hybrid agreement, resolving both the FLSA and Colorado state law claims, which form has been previously approved in this District:

> While courts across the country have reached differing conclusions as to whether a Rule 23 state law wage claim may proceed in the same action as an FLSA collective wage claim, the most recent cases arising in this District tend toward approving such arrangements.  This case is at the settlement stage and both sides have agreed to treat the settlement as a hybrid action.  The putative Class Members are identical for the FLSA claims and the state [Minimum Wage Order] claims. The putative Class Members in this case are low wage

6

> employees of a restaurant, many of whom are not United States citizens.  With the vehicle of class notice, most would never know of the alleged wage violations and would have never brought overtime issues to the attention of the employer.  With ample current precedent to support proceeding with a hybrid class action, the court will allow such a settlement class here.

*Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 125 (D. Colo. 2016); *see also*, *Bessey v. Mand Made Pizza, Inc. et al.,* Case 1:18-cv-00938-LTB (D. CO)(Dkt. #65 ( granting final approval of a similar hybrid settlement structure covering similar claims) Many of these same reasons support the hybrid settlement as proposed by the Parties in this action, and for the reasons expressed below, the Settlement Agreement should be approved to ensure that the maximum number of Class Members obtain the relief sought.

### A.  Standard for Final Approval of Class Settlements

In determining whether to approve a proposed class settlement, courts must consider whether the settlement is fair, reasonable, and adequate.  *In re Integra Realty Res., Inc.*, 354 F.3d 1246, 1266 (10th Cir. 2004).  Courts in the Tenth Circuit examine four factors in determining whether this standard is satisfied:

> (1)  whether the proposed settlement was fairly and honestly negotiated;
>
> (2)  whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3)  whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4)  the judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).  In consideration of these factors, approval of the Settlement Agreement is warranted.  *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) (presumption in favor of voluntary settlement "especially strong" in class actions) (citation omitted).

7

1. **The Proposed Settlement Was Fairly And Honestly Negotiated**

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.,* No. 05-cv-01567WYD-BNB, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008) (citation omitted). The primary concern is "the protection of class members whose rights may not have been given adequate consideration during" settlement negotiations. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283 (D. Colo. 1997) (quoting *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 546 (D. Colo. 1989)).

Here, the Parties are represented by experienced counsel specializing in the type of wage and hour claims alleged in the action. Through the exchange of information, each Party possessed ample information to fully evaluate the strengths and weaknesses of their claims and defenses, as well as the fairness of the Settlement Agreement. The Parties' counsel rigorously negotiated the settlement terms, such that there can be no doubt that the settlement was honestly and fairly negotiated, and not the product of collusion. *See Lucas*, 234 F.R.D. at 693 (settlement presumed to be fair and reasonable where it is the result of "arm's length negotiations between experienced counsel after significant discovery").

2. **Serious Questions Of Law And Fact Exist, Placing The Ultimate Outcome Of This Action In Doubt**

The complexity, expense, and likely duration of this litigation also weighs heavily in favor of the Court finding that the settlement is adequate, fair and reasonable. To continue through trial would expose the Parties to significant risks. *See Wilkerson*, 171 F.R.D. at 285-86 ("Indeed, the one constant about litigation, based on my experiences as a trial attorney and now as a judge, is that the ultimate jury result is uncertain, unknown and

8

unpredictable.").

Plaintiffs believe that their claims are strong but recognize that success is not guaranteed. Plaintiffs believe Defendants violated the FLSA and Colorado state law by failing to pay them and other similarly situated delivery drivers the federal minimum wage because their expense reimbursements were insufficient to cover their automobile expenses while delivering pizzas for Defendants, and by failing to ensure that drivers received paid rest breaks during their shifts and were properly compensated for missed or interrupted meal breaks. Defendants, however, contend that their reimbursements to delivery drivers are reasonable approximations of the drivers' automobile expenses and do not cause wages to fall below the federal minimum wage. Similarly, Defendants contend that Plaintiffs and Class Members were afforded meal and rest breaks as required by Colorado law. Defendants are also confident that Plaintiffs would ultimately not prevail in obtaining final certification of a class because individualized inquiries would be necessary to determine the Class Members' damages. Nonetheless, while Defendants believe that their defenses are strong, Defendants recognize that they may not ultimately prevail and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. Moreover, the Parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Further, Defendants contend their actions were at all times taken in good faith, negating the FLSA's liquidated damages provision. Because there are several

9

important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement.

### 3. The Value Of Immediate Recovery Outweighs The Possibility Of Any Future Relief

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993), abrogated on other grounds by *Devlin v. Scardelletti*, 536 U.S. 1 (2002). This value should be measured against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.* at 1015. The issues here are complex and would be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the Parties will engage in significant discovery, including depositions of numerous individual employees of Defendants, the Named Plaintiff, and numerous Round 1 opt-in Plaintiffs. The Parties would also have to engage in extensive motions practice including completing briefing on Plaintiff's Motions for Class Certification and Approval of Notice, as well as Defendants' Motion to Decertify the Class, if the Court were to certify a class. Motions for Summary Judgment would also likely be filed on Defendants' additional affirmative defenses. In the event of trial, trial testimony would involve in person testimony from representatives of Defendants, Class Members, and expert witnesses. Thereafter, any final judgment could be appealed, thereby extending the duration of the litigation.

Given these risks, further litigation could result in no recovery for Class Members or a significant judgment against Defendants which could cause substantial financial harm or bankrupt them, leaving nothing for the Class Members to recover. Based on these circumstances, it is prudent for the parties to "take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597,

10

624 (D. Colo. 1974) (citation omitted). For these reasons, the value of an immediate settlement far outweighs the uncertainty of any future relief, and the Settlement Agreement should be approved. *See Pliego*, 313 F.R.D. at 130-31 ("The proposed settlement reflects a reasonable compromise of the risk Plaintiff and the Class faced had they proceeded to trial. … Moreover, given the inherent risks associated with further litigation, the Class Members may recover less should the case proceed through trial. Thus, the proposed settlement at this stage far outweighs any potential benefits, if any at all, of further litigation.").

### 4. Counsel Believe The Settlement Is Fair And Reasonable

Counsel for both sides fully support the Settlement Agreement, and "[c]ounsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 (finding that this factor favored approval where "the parties' counsel - among whom are attorneys with substantial experience in complex class action litigation and disability class actions - unanimously support this settlement") (citation omitted); *see also Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664, 667 (D. Colo. 2015) ("Class Counsel are experienced in consumer class actions, and weight is given to their favorable judgment as to the merits, fairness, and reasonableness of the settlement."); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) ("Courts have consistently refused to substitute their business judgment for that of counsel and the parties."); *Wilkerson*, 171 F.R.D. at 288-89. When evaluated in light of the four factors identified by the Tenth Circuit, the proposed settlement is fair, reasonable, and adequate and should be approved.

### B. Standard for Approval of FLSA Settlements

As stated above, the settlement provides relief for individuals who have

affirmatively opted-in to this matter pursuant to the FLSA's collective action procedures and for those who have chosen not to opt-out of the settlement pursuant to Rule 23. For many of the reasons stated above regarding settlements under Rule 23, the settlement is a fair and adequate resolution under the FLSA and ought to be approved.

In a lawsuit brought by an employee against his or her employer under § 216(b), the employee may settle and release FLSA claims if the parties present to the court a proposed settlement and the court approves the settlement. *Pliego*, 313 F.R.D. at 128-29. The settlement should be approved when it is a fair and reasonable resolution of a *bona fide* dispute under the FLSA. *Id.*

As explained above, the Parties are represented by experienced and competent counsel and the Parties engaged in extensive negotiations. In addition, counsel for the Parties have discussed at considerable length Plaintiffs' assertions and Defendants' defenses, and their respective legal theories in support of their positions. This settlement of these claims results from a compromise between the Parties on a variety of *bona fide* disputes regarding issues of law and fact, including the applicable reimbursement rate and the propriety of Defendants' use and application of a tip credit. The Settlement occurred only after informal discovery, including production of payroll and reimbursement records to facilitate both Parties' ability to make detailed legal and factual analyses of the claims and defenses, arms-length negotiation between Plaintiffs' counsel and Defendants' counsel, and a full-day mediation with Todd McNamara, experienced in resolving wage & hour disputes under the FLSA. The Parties stipulate that they are resolving the matter to avoid unnecessary further costs, time, and risks associated with continuing this litigation. The Parties also considered the inherent risks in bringing the matter to trial, judicial resources, and the costs and time associated with further litigation and determined a

12

settlement would be in the public's interest.

The Settlement negotiated in this case reflects a reasonable compromise of the disputed issues and other relevant considerations. All Parties, through their attorneys, voluntarily agreed to the terms of the Settlement during negotiations. All Parties were counseled and represented by their respective attorneys throughout the litigation, negotiation, and settlement process. The Settlement amounts apportioned to the different opt ins will take into account and be apportioned based on the specific number of miles driven and rate of reimbursement of each opt in Plaintiff. Counsel for all Parties agree that, in their respective opinions, the settlement is fair and reasonable under the circumstances. Because the Settlement agreed to by the Parties is a fair and equitable compromise of a *bona fide* dispute, the Parties request that the Court approve the Settlement and enter a final judgment dismissing the case, in its entirety, with prejudice.

## IV. CONCLUSION

The Settlement is fair, adequate, and reasonable. It will result in considerable payments to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by counsel for the respective Parties who are experienced in wage and hour class action litigation and through the assistance of an equally experienced mediator. For the foregoing reasons, the Parties respectfully request that the Court finally approve the Settlement.

Respectfully Submitted,

*/s/ J. Forester*
**J. Forester**
**FORESTER HAYNIE PLLC**
Texas Bar No. 24087532
400 N. St. Paul Street, Suite 700
Dallas, TX 75201
Telephone: (214) 210-2100
Fax: (214) 346-5909

jay@foresterhaynie.com

**ATTORNEY FOR PLAINTIFFS**

NIXON SHEFRIN OGBURN DREW, P.C.

*s/ Lawrence D. Stone*

Lawrence D. Stone, #8803
5619 DTC Parkway, Suite 1200
Greenwood Village, CO 80111
Telephone:  (303) 773-3500
Facsimile:   (303) 779-0740
lstone@nixonshefrin.com
**ATTORNEY FOR DEFENDANTS**

### **CERTIFICATE OF SERVICE**

A copy of the foregoing document was electronically served on all counsel of record.

*/s/ J. Forester*
**J. Forester**

14