IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 18-cv-0932-WJM-KLM

MICHAEL MCKEON, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

INTEGRITY PIZZA LLC, and
INFINITY PIZZA LLC, d/b/a Domino's Pizza,

    Defendants.

---

**ORDER GRANTING JOINT MOTION FOR FINAL APPROVAL OF
SETTLEMENT AGREEMENT AND PLAINTIFF'S UNOPPOSED
MOTION FOR ATTORNEY'S FEES AND COSTS**

---

Before the Court is the parties' Joint Motion for Final Approval of Settlement Agreement ("Joint Motion") (ECF No. 68) and Plaintiff's Unopposed Motion for Attorney's Fees and Costs ("Fee Motion") (ECF No. 69). The Court held a settlement fairness hearing ("Settlement Hearing") on November 12, 2020. (ECF No. 72.) After considering the arguments raised at the Settlement Hearing and in the Joint Motion and Fee Motion, the Court granted the Joint Motion and Fee Motion by way of an oral ruling from the bench and stated that a written order would follow. (*Id.*) This is that order.

## I. BACKGROUND

Michael McKeon brought this lawsuit individually and on behalf of similarly situated delivery drivers for Integrity Pizza LLC and Infinity Pizza LLC d/b/a Domino's Pizza (jointly, "Defendants") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Colorado Wage Claim Act, Colo. Rev. Stat.

§§ 8-4-101, *et seq.*, and the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101, *et seq.*, as implemented by the Colorado Minimum Wage Order ("Minimum Wage Act"). (ECF No. 53.)  Plaintiff alleges that Defendants failed to pay delivery drivers the federal minimum wage as a result of: (1) their use of a flawed method to determine reimbursements which were insufficient to cover the delivery drivers' automobile expenses; and (2) their failure to ensure that drivers received paid rest breaks during their shifts and were compensated for missed or interrupted meal breaks.  (*Id.* at 1.) Plaintiff filed this lawsuit on April 20, 2018 (ECF No. 1) and filed an Amended Complaint on November 25, 2019 (ECF No. 53).

After the lawsuit was filed, the parties engaged in discussions to resolve this action.  On September 5, 2018, the parties filed a Joint Motion to Approve Stipulated Form of Collective Action and to Stay Pending Mediation, in which the parties moved for conditional certification of an FLSA collective action.  (ECF No. 23.)  The Court granted that motion on April 12, 2019 and conditionally certified a collective action under 29 U.S.C. § 216(b) with the eligible collective action class members defined as "All current and former delivery drivers employed by Defendant from April 12, 2016 to [April 12, 2019]."  (ECF No. 44 at 6.)  The Court also approved a modified Notice and Consent to Join Form.  (*Id.*)  Forty-nine individuals opted-in to the FLSA collective action.  (ECF No. 73 at 1.)

Thereafter, the parties agreed to participate in an alternative dispute resolution process on August 22, 2019.  (ECF No. 68 at 4.)  During the mediation, the parties settled the putative class and collective action.  (*Id.*)

On December 9, 2019, the parties filed the Joint Motion for Preliminary Approval

2

of the Parties' Settlement.  (ECF No. 54.)  On August 6, 2020, the Court reviewed the proposed settlement agreement and preliminarily approved the proposed settlement agreement as being fair and reasonable.  (ECF No. 62.)  The Court also preliminarily certified a Rule 23 class for settlement purposes, defined as "Delivery drivers employed by Defendants between April 20, 2015 and August 6, 2020, who have not previously opted-in this matter."  (*Id.*)

On August 14, 2020, the Court granted Defendants' unopposed motion to amend various deadlines related to the final fairness hearing and approved a revised Notice of Class Action Settlement.  (ECF No. 64; ECF No. 63-2.)

In a declaration recently filed with the Court, the settlement administrator represented that the Court-approved notice of proposed settlement was individually mailed to all 781 Settlement Class members on August 24, 2020.  (ECF No. 68-1 at 2, ¶ 7.)  After 247 Notices were initially returned as undeliverable, the settlement administrator re-mailed the Notice to the 227 Settlement Class Members for which it was able to obtain an updated address.  (*Id.* at 3 ¶ 8.)  Of those, just 35 Notices were again returned as undeliverable.  (*Id.*)  Additionally, seven Notices contained a forwarding address to which the Notice was re-mailed.  (*Id.*)

The settlement administrator also established: (1) a toll-free phone number which Settlement Class members could call to ask questions about the settlement or request a re-mailing of the Notice; and (2) an e-mail address which Settlement Class members could e-mail a copy of their completed Claim Form, ask questions about the settlement, or request a re-mailing of the Notice.  (*Id.* at 3 ¶¶ 9–10.)  As of October 26, 2020, four individuals called the toll-free phone number and four individuals e-mailed

the e-mail address.  (*Id.*)

In total, 62 individuals opted-in to the Rule 23 settlement class.  (ECF No. 73-1 at 1.)  As of the October 23, 2020 deadline, the settlement administrator did not receive any requests for exclusion from the settlement class or objections to the settlement.  (*Id.*)

On October 26, 2020, the parties filed their Joint Motion for Final Approval of the Settlement Agreement (ECF No. 68) and Plaintiff's Unopposed Motion for Approval of Attorney's Fees and Costs (ECF No. 69).  On November 16, 2020, the parties filed a Joint Notice of Supplemental Report.  (ECF No. 73.)

## II.  APPROVAL OF SETTLEMENT AGREEMENT

### A.  Analysis of Settlement Agreement Factors

In deciding whether to approve a settlement in class action, a court must determine whether the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Courts consider four factors in evaluating the settlement:

> (1) whether the proposed settlement was fairly and honestly negotiated;
>
> (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;
>
> (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and
>
> (4) the judgment of the parties that the settlement is fair and reasonable.

*Gottlieb v. Wiles*, 11 F.3d 1004, 1014 (10th Cir. 1993), *abrogated on other grounds by Devlin v. Scardelletti*, 536 U.S. 1 (2002).  The Court may also consider the fact that no

4

objections were filed by any class member. *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) ("No timely objection was raised by any Class Member to the proposed settlement, and less than 5% of all Class Members have chosen to opt out.  One untimely objection, improper in other regards, was filed and subsequently withdrawn prior to the fairness hearing.  No objection was raised at the fairness hearing.  The Court gives these factors substantial weight in approving the proposed settlement.").

Having thoroughly reviewed the Joint Motion and the Settlement Agreement, the Court finds that the Settlement Agreement negotiated by counsel is fair, reasonable, and adequate.  Regarding the four factors, the parties have demonstrated that the Settlement Agreement was negotiated at arms' length by counsel experienced in these types of cases.

The parties have also shown that serious questions of fact and law exist, particularly concerning the question of whether Defendants' reimbursements to Class members caused delivery drivers' wages to fall below the federal minimum wage.

Further, the Court finds that the value of the Settlement Agreement outweighs the possibility of recovery after protracted litigation.  As outlined by the Settlement Agreement, Defendants have agreed to pay $396,205 into a "Qualified Settlement Fund" to settle this action.  (ECF No. 68-2 at 7.)  Approximately $195,421 of the Qualified Settlement Fund will be paid to the 111 opt-in Class members (49 FLSA opt-in members and 62 Rule 23 opt-in members) such that each opt-in Class member will receive an average payment of $1,760.55.  (ECF No. 73 at 1.)  The parties will thereafter distribute approximately $59,642.37 from the Qualified Settlement Fund to

the 719 absent Class members who have neither opted-in nor out of the action. (*Id.*) Each absent Class member receives an average payment of $82.95. (*Id.*) Thus, the Settlement Agreement provides a significant and immediate benefit to all Class members. It also ensures the Class members will receive reasonable compensation in light of the uncertainties of litigating to a judgment.

Finally, both parties have represented their view that the Settlement Agreement is fair and reasonable. The fact that no class member objects shows that the class also considers this settlement fair and reasonable. *See In re Dun & Bradstreet*, 130 F.R.D. at 372.

As set forth above, the Court finds that each of the factors weighs in favor of finding that the Settlement Agreement is fair, reasonable, and adequate.

**B.    *Cy Pres* Award**

The *cy pres* doctrine in class action settlements "allows a court to distribute unclaimed or non-distributable portions of a class action settlement fund to the 'next best' class of beneficiaries." *Tennille v. W. Union Co.*, 809 F.3d 555, 560 n.2 (10th Cir. 2015) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011)). District courts in the Tenth Circuit have approved *cy pres* awards to third-party beneficiaries in class action settlements. *See In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *5 (D. Colo. Aug. 28, 2013); *Childs v. Unified Life Ins. Co.*, 2012 WL 13018913, at *5 (N.D. Okla. Aug. 21, 2012). A *cy pres* award is appropriate "only if the beneficiary is the next best use for indirect class benefit" and the "cy pres beneficiary . . . [is] related to the nature of a plaintiff's claims." *Bailes v. Lineage Logistics, LLC*, 2016 WL 4415356, at *7

(D. Kan. Aug. 19, 2016) (internal quotation marks omitted and alterations incorporated).

Courts also evaluate whether beneficiaries are "carefully chosen to account for the nature of the lawsuit, the objectives of the underlying statutes, and the interests of silent class members, including their geographic diversity." *In re Motor Fuel Temperature Sales Practices Litig.*, 286 F.R.D. 488, 504 (D. Kan. 2012). Courts have rejected *cy pres* awards when the parties failed to identify a proposed beneficiary, or when the beneficiary was "so unrelated to the claims" that the class members would not benefit. *Better v. YRC Worldwide Inc.*, 2013 WL 6060952, at *6 (D. Kan. Nov. 18, 2013); *Bailes*, 2016 WL 4415356, at *7; *but see In re Crocs*, 2013 WL 4547404, at *5 (preliminarily approving *cy pres* provision that awarded unallocated funds to an charitable organization with no immediately discernable ties to the purpose of the lawsuit).

Under the Settlement Agreement, in the event there are any stale checks attributable to any Class member after 180 days from the initial mailing, those funds will be delivered to the *cy pres* recipient, Domino's Partner's Foundation, a 501(c) non-profit organization. (ECF No. 68-2 at 8–9.) This foundation provides financial help to Domino's team members—like the Class members—in times of hardship and adversity. Given the nature and objectives of the lawsuit, the Court finds that the *cy pres* award is appropriate and the next best use of funds to provide an indirect class benefit for the Class members.

Accordingly, the Court fully and finally approves the Settlement Agreement and grants the Joint Motion (ECF No. 68).

### III. INCENTIVE AWARD

When considering the appropriateness of an incentive award for class representatives, the Court should consider: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation.  *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Lucken Family Ltd. P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010).

Under the Settlement Agreement, the parties propose that Mr. McKeon will receive $5,000 as an incentive payment.  (ECF No. 68-2 at 9.)  Mr. McKeon spent time and effort working on the case with counsel over the course of two years.  As explained above in Part II.A, the litigation will yield substantial individual payouts to both opt-in and absent Class members.  Mr. McKeon's commitment to the case, the personal sacrifices of his time while pursuing this litigation, and the outcome achieved warrant a significant award in this case.  *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (noting that service awards are especially appropriate in employment litigation where "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers").

For the reasons set forth above, the Court approves an $5,000 incentive award for Mr. McKeon.

## IV. ATTORNEY'S FEES AND COSTS

Plaintiff's counsel entered into a contingency fee arrangement with Mr. McKeon, which provides that Plaintiff's counsel would receive one-third of any recovery plus expenses. (ECF No. 69-1 at 5 ¶ 13.) Under this arrangement, Plaintiff's counsel seeks an attorney's fee award totaling $133,000, as well as $3,141.63 of out-of-pocket costs. (*Id.* at 6 ¶ 14; ECF No. 73 at 1.)

When considering the appropriateness of an attorney's fees award, the Court considers the "*Johnson* factors": (1) the time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1979); *Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII-A., L.P.*, 888 F.3d 455, 458 (10th Cir. 2017) (recognizing that courts within the Tenth Circuit utilize the *Johnson* factors to determine the appropriate fee award).

The Court finds that the requested amount of fees is reasonable considering the effort expended on this case by class counsel, the risks and difficulties inherent in FLSA litigation, the discovery undertaken, and the skill required and dedication displayed over

the litigation of this matter. The fee request is also in line with contingency fee awards approved in other cases. *See, e.g.*, *Prim v. Ensign U.S. Drilling Inc.*, 2020 WL 4539630, at *4 (D. Colo. Aug. 6, 2020) (recognizing that 35% contingency fee was within the customary range for attorney's fees); *Swanson v. Cathedral Energy Servs., Inc.*, 2019 WL 4858453, at *3 (D. Colo. Oct. 2, 2019) (finding 36% contingency payment is reasonable in FLSA action); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Vaszlavik v. Storage Tech. Corp.*, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) (finding that the "requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and that "[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable").

Significantly, under the Settlement Agreement negotiated by counsel, Defendants have agreed to pay $396,250 to settle this action, with average payments to absent Class members and opt-in Class members totaling $82.95 and $1,760.55, respectively. (ECF No. 73 at 1.) Thus, the negotiated Settlement Agreement will benefit *all* Class members, not just Mr. McKeon and the opt-in Class members. This is a good result for the Class members and weighs very heavily in favor of approving the amount of fees requested. *See In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) (noting that "the amount of the recovery, and end result achieved are of primary importance" when considering what constitutes a reasonable attorney fee).

Moreover, although the Settlement Agreement provides that Plaintiff's counsel may recover "up to $15,000 in costs" (ECF No. 68-2 at 9), Plaintiff's counsel is only seeking recovery for the actual costs incurred—$3,141.63—and will distribute the remaining $11,868.37 of "unused costs" to the absent Class members.  Thus, the requested actual costs are very reasonable.

Having considered the applicable *Johnson* factors, the Court finds that Plaintiff's counsel's request for $133,000 in attorney's fees and $3,141.63 in actual costs is fair and reasonable.  The Court therefore grants the Fee Motion (ECF No. 69).

## V.  CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. The parties' Joint Motion for Final Approval of the Settlement Agreement (ECF No. 68) is GRANTED;

2. Plaintiff's Unopposed Motion for Approval of Attorney's Fees and Costs (ECF No. 69) is GRANTED;

3. The parties' Class Action Settlement Agreement (ECF No. 68-2) is APPROVED;

4. Plaintiff Michael McKeon is AWARDED an incentive award for serving as class representative in the amount of $5,000 to be paid from the Settlement Fund;

5. Plaintiff's attorney's fees and actual costs shall be paid to Forester Haynie PLLC from the Settlement Fund in the amounts specified under the Settlement Agreement and confirmed herein;

6. The distribution of the Qualified Settlement Fund as defined in the Settlement Agreement and confirmed herein is APPROVED;

7. The Court shall retain jurisdiction over the interpretation and implementation of

the Settlement Agreement;

8. Pursuant to the parties' stipulation in the Settlement Agreement, all claims in this action are hereby voluntarily DISMISSED WITH PREJUDICE; and

9. The Clerk SHALL TERMINATE the case. The parties shall bear their own fees and costs with the exception of those provided for in the Settlement Agreement and confirmed herein.

Dated this 18th day of November, 2020.

BY THE COURT:

William J. Martínez
United States District Judge